# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| PALMER CRAVENS, LLC and the ESTATE OF GUY HARDY d/b/a DRIPPING SPRINGS ROOFING, as authorized by and through NORA FINLEY, the sole heir and representative,<br>    Plaintiff,<br>v.<br>PREFERRED CONTRACTORS INSURANCE COMPANY RISK RETENTION GROUP, LLC,<br>    Defendant. | §§§§§§§§§§§§§ CA 1:22-CV-327-JRN |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE JAMES R. NOWLIN
UNITED STATES DISTRICT JUDGE:

Before the court is Defendant's Motion for Partial Summary Judgment (Dkt. #12),[1] and all related briefing. After reviewing the pleadings, the relevant case law, and determining a hearing is unnecessary, the undersigned submits the following Report and Recommendation to the District Court.

**I.  BACKGROUND**

Palmer Cravens, LLC ("Palmer") contracted with Ja-Mar Roofing ("Ja-Mar") to remove and replace the roof on a building located at 2101 South 2nd Street in McAllen, Texas ("Property"), which had been damaged by a hail storm. Ja-Mar subcontracted the roofing work to

---

[1] The motion for summary judgment was referred by then-presiding United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. #15.

Guy Hardy d/b/a Dripping Springs Roofing ("Dripping Springs").[2] Preferred Contractors Insurance Company Risk Retention Group LLC ("PCIC") issued a Commercial General Liability Policy to Dripping Springs. Dkt. #14-3.

The roof began to leak sometime after the work was completed. In 2014, Palmer filed suit against Ja-Mar in Hidalgo County seeking to recover for the damage to the Property. In January 2015, Palmer amended suit to join Dripping Springs as a defendant. PCIC initially denied Dripping Springs' claim then agreed to defend Dripping Springs under a reservation of rights after Palmer amended suit again. Three months later, PCIC withdrew its defense.[3]

During the state-court litigation, Hardy petitioned for a Chapter 7 bankruptcy, and the court entered a "no asset" discharge to him.[4] Hardy also passed away.

At trial, Palmer argued that 100% of responsibility for Palmer's damages should be assessed to Ja-Mar. MSJ Exh. 8 at 33. The jury agreed and found Ja-Mar 100% liable, Dripping Springs 0% liable, and JO 0% liable, for Palmer's damages. After the verdict, the trial court allowed Palmer to sever its claims against Dripping Springs and proceed to a second trial against Hardy d/b/a Dripping Springs.

The trial court issued writs for Dr. Nixon (Hardy's former wife) and Nora Finley (Plaintiff here) to appear and defend the suit as alleged heirs of Hardy's estate. They both appeared at the Zoom bench trial represented by counsel. Following the bench trial, the court awarded the damages requested by Palmer against Hardy d/b/a Dripping Springs and the Estate only and not against Dr. Nixon or Finley individually. Dkt. #14-11.

---

[2] Dripping Springs subcontracted the work to JO Roofing ("JO").
[3] Whether PCIC's refusal to defend Dripping Springs in the suit breached the CGL policy is at issue in this case but not relevant to this motion.
[4] The court notes the parties call Dripping Springs a sole proprietorship of Hardy, but his bankruptcy filing describes the entity as an LLC and states he did not have any sole proprietorships. Dkt. #12-2 at 4, 11.

In this suit, Palmer and Hardy's Estate (through Finley) assert claims for breach of contract based on PCIC's withdrawal of its defense and refusal to pay its policy limit; violations of the Texas Insurance Code unfair settlement practices based on similar alleged facts; violations of the Texas Insurance Code processing and settlement of claims based on the timing of PCIC's treatment of Dripping Spring's claim; and estoppel that PCIC's failure to defend the suit put Dripping Springs in a position that it had to defend itself alone with no method to pay for legal fees. Compl. ¶¶ 22-42.

In its Partial Motion for Summary Judgment, PCIC moves for summary judgment on the issue of whether it should be bound by the state-court judgment against Hardy's estate. PCIC argues that if a judgment is rendered without a fully adversarial trial, it is not binding on a defendant's insurer or admissible as evidence of damages in an action against the defendant's insurer. Plaintiffs argue the PCIC Policy does not require that the final judgment be rendered after a "fully adversarial trial" and alternatively that the trial was adversarial.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to establish the

existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004).

The court will view the summary judgment evidence in the light most favorable to the non-movant. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id*.

## III.   INSURANCE CONTRACTS

Texas substantive law governs the insurance contracts at issue in this diversity action. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Bexar Cnty. Hosp. Dist. v. Factory Mut. Ins. Co.*, 475 F.3d 274, 276 (5th Cir. 2007). "Texas courts interpret insurance policies according to the rules of contract construction." *Tetra Techs., Inc. v. Cont'l Ins. Co.*, 814 F.3d 733, 746 (5th Cir. 2016) (quoting *Likens v. Hartford Life & Accident Ins. Co.*, 688 F.3d 197, 199 (5th Cir. 2012)). The court "evaluate[s] the contract based on its plain meaning, determining what the words of the contract say the parties agreed to do." *Id*. The court "must examine the policy as a whole, seeking to harmonize all provisions and render none meaningless." *Id*. (quoting *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015)). If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous," and the court must "construe [the policy] as a matter of law and enforce it as written." *Id*. "An ambiguity does not exist . . . simply because the parties interpret a policy differently." *Id*. Instead, a policy is ambiguous "if the

contractual language is susceptible to two or more reasonable interpretations." *Id.* Ambiguous policy language—in particular, exclusionary language—must be construed "strictly against the insurer and liberally in favor of the insured." *Id.* "If the insured's construction of an ambiguous exclusionary provision is reasonable, the court must adopt it, even if it is not the most reasonable position." *Id.*

In Texas, an insurer's duties to defend and indemnify its insured are "distinct and separate duties." *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011) (quoting *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821–22 (Tex. 1997)). The duty to defend means the insurer will defend the insured in any lawsuit that "alleges and seeks damages for an event potentially covered by the policy," while the duty to indemnify means the insurer will "pay all covered claims and judgments against an insured." *Id.* at 252-53 (quoting *D.R. Horton–Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)).

IV. **ANALYSIS**

    A. **Was a "fully adversarial trial" required?**

Plaintiffs argue the Policy does not require a "fully adversarial trial" for a judgment to be enforceable against PCIC. The Policy language states a third party may sue PCIC if it has a final judgment against the insured:

> A person or organization may sue [PCIC] to recover on an agreed settlement or on a *final judgment* against an insured; but [PCIC] will not be liable for "damages" that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance.

Dkt. #14-3 (Policy) at 24 (emphasis added). PCIC responds that Plaintiffs are conflating standing to sue PCIC with the ability to enforce a judgment.

Although Plaintiffs' argument has a logical appeal, it conflicts with the approach taken by the Fifth Circuit in *Turner v. Cincinnati Insurance Co.*, 9 F.4th 300 (5th Cir. 2021). *Turner*

5

examined Texas law to determine whether a plaintiff who had a non-adversarial default judgment against an insured could sue the insurance company. *Id*. at 308. *Turner* held that first the general rule applies that a third-party plaintiff is barred from suing the defendant's insurer unless the third-party plaintiff has a judgment or agreement establishing the insured-defendant's liability. *Id*. at 312. Second, the court should look at whether the judgment or agreement satisfies the insurance policy's no-action clause.[5] *Id*. In *Turner*, the policy's no-action clause required "an adjudication against" the insured. *Id.* at 312-13. *Turner* held the non-adversarial default judgment satisfied the policy's no-action clause, and thus the plaintiff had standing to sue. *Id.* at 313.

Although *Turner* specifically addressed standing to sue, which is not contested here,[6] *Turner* also noted that Texas law requires "a fully adversarial trial" to bind the defendant's insurer to the judgment. *Id.* at 308, 310-11 (citing *Great Am. Ins. Co. v. Hamel*, 525 S.W.3d 655, 663, 666 (Tex. 2017); *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996)). *Turner* did not limit this to only insurance policies that require fully adversarial trials. *Id.* Accordingly, under *Turner*, an insurer is only bound by a fully adversarial trial against its insured. *Id*. And, under *Turner*, the policy's no-action clause is only relevant to whether a third party has standing to sue. *Id.* at 312. Accordingly, PCIC is only bound by the state-court judgment if it resulted from a "fully adversarial trial."

B.   Was a "fully adversarial trial" satisfied?

"Fundamentally, proceedings are 'adversarial' when the parties oppose each other." *Hamel*, 525 S.W.3d at 666. Courts should not focus on what evidence was or was not presented

---

[5] Most policies include a "no-action" clause stating that third-party plaintiffs have no cause of action against the insurance company unless certain circumstances are satisfied. Some policies require merely a judgment, while others require an actual trial. *Id.* at 309, 312.
[6] As Plaintiffs point out, the policy here only requires a "final judgment," which they have.

6

at the earlier trial because "[e]very trial presents unique challenges, requiring subjective judgment calls . . . . [and] determining whether and when those calls destroy the 'adversarial' nature of the proceeding is simply not possible." *Id*. "[A]dversity turns on the insured defendant's incentive to defend (or lack thereof), and an after-the-fact evaluation of the parties' trial strategies therefore has no place in the analysis." *Id*. at 667. Instead, "the controlling factor is whether, at the time of the underlying trial or settlement, the insured bore an actual risk of liability for the damages awarded or agreed upon, or had some other meaningful incentive to ensure that the judgment or settlement accurately reflects the plaintiff's damages and thus the defendant—insured's covered liability loss." *Id*. a 666.

When parties reach an agreement before trial or settlement that deprives one of the parties of its incentive to oppose the other, the proceeding is no longer adversarial. *Id.* at 667. The presence of such an agreement creates a strong presumption that the judgment did not result from an adversarial process, while the absence of such an agreement creates a strong presumption that it did. *Id.* at 668.

PCIC asserts the state court trial was not adversarial because Guy Hardy d/b/a Dripping Springs Roofing was a sole proprietorship and Hardy passed away before trial; Hardy's debts had been completely discharged in his bankruptcy before trial; the Estate was not represented at the trial; and only Palmer presented evidence and questioned live witnesses at the trial. Dkt. #12 at 16-17. Plaintiffs assert Hardy's presumptive heirs, Dr. Nixon and Ms. Finley, appeared at the bench trial with their counsel and there was no agreement in place that Palmer would not pursue the Estate's other assets to satisfy any judgment.

In this case, both of Hardy's presumptive heirs appeared at the trial and expressly disclaimed any interest in the estate and trial:

7

> MR. THOMAS [For Palmer]: All right. Thank you. I'll pass the witness.
> THE COURT: Any questions anybody?
> You're muted. You're muted, sir.
> MR. COLLIE [For Dr. Nixon]: Yes, sir.
> No questions, Your Honor.
> I just wanted to just state for the record again the evidence we provided to the Court shows that Ms. -- Dr. Nixon is not an heir, and as such we expect Guy Hardy's original answer to stand. And we expect to make no efforts of our own to present a defense against -- against this matter at all.
> THE COURT: All right. Thank you.
> I'm sorry, I didn't mean to cut you off. Is there anything else?
> MR. COLLIE: Just checking my notes. Just adding that the -- the insurance company's withdrawal is what put us in a position to even be here. So we'd like to – just want to put it on the record that we don't have -- we don't have an interest in the estate if there was an estate there to begin with.
> THE COURT: All right, sir. Thank you.
> Same answer, Mr. Wood?
> MR. WOOD [For Ms. Finley]: Same answer, Your Honor.
> THE COURT: All right, sir.

Dkt. #12 Exh. 14 at 27:4-28:3. The court does not need to guess whether Dr. Dixon's or Ms. Finley's failure to make any objections or put on any witnesses at the state-court trial was a strategic decision because their counsels expressly stated they had no interest in the trial. Accordingly, there is no reason to believe the state-court court judgment "accurately reflects the plaintiff's damages and thus the defendant—insured's covered liability loss." *See Hamel*, 525 S.W.3d at 666. Plaintiffs have failed to raise a question of material fact as to whether the state-court trial was adversarial. The undersigned will recommend PCIC's motion be granted.

V.     **RECOMMENDATIONS**

The court **RECOMMENDS** that the District Judge **GRANT** Defendant's Motion for Partial Summary Judgment (Dkt. #12).

VI.    **OBJECTIONS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

8

being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Sers. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED July 14, 2023.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE