IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| PALMER CRAVENS, LLC, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 7:23-cv00361 |
| | § | |
| PREFERRED CONTRACTORS | § | |
| INSURANCE COMPANY RISK | § | |
| RETENTION GROUP, LLC, | § | |
| | § | |
| Defendant. | § | JURY DEMANDED |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiffs Palmer Cravens, LLC n/k/a Park Place Ventures LLC and the Estate of Guy Hardy d/b/a Dripping Springs Roofing, as authorized by and through Nora Finley, the sole heir and representative, file this first amended complaint against Defendant Preferred Contractors Insurance Company Risk Retention Group LLC and respectfully show as follows:

### PARTIES

1. Palmer Cravens, LLC n/k/a Park Place Ventures LLC ("Palmer") is a Texas limited liability company with members who at all times have been citizens of the State of Texas.

2. Guy Hardy (deceased) was a citizen of Texas and did business as Dripping Springs Roofing. Nora Finley, a citizen of Texas, is the sole heir and representative of the Estate of Guy Hardy. Guy Hardy d/b/a Dripping Springs Roofing and Nora Finley, the

sole heir and representative of the Estate of Guy Hardy, are collectively referred to herein as "Hardy."

3. Preferred Contractors Insurance Company Risk Retention Group LLC ("PCIC") is a foreign risk retention group organized under the laws of the State of Montana with members who at all relevant times have been citizens of the States of California and Montana. PCIC has appeared herein.

## JURISDICTION AND VENUE

4. This is an action in which this Court has original jurisdiction because the matter in controversy exceeds the value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1).

5. This Court has personal jurisdiction over PCIC because, upon information and belief:

    a. it has conducted business in the State of Texas;

    b. it has contracted with a Texas citizen;

    c. it has sufficient minimum contacts with the State of Texas such that the assumption of jurisdiction will not offend traditional notions of fair play and substantial justice; and/or

    d. it committed a tort, in whole or in part, in the State of Texas.

6. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Palmer's claims occurred in this District.

# BACKGROUND

7. This lawsuit arises from PCIC's wrongful rejection of its duty to defend and its denial of coverage under Policy No. PC83173 (the "Policy"), a $1 million Commercial General Liability insurance policy issued to Dripping Springs Roofing.

**The Roof Replacement**

8. The underlying insurance claim arose from a project to remove and replace the damaged roof on a building located at 2101 South 2nd Street in McAllen, Texas (the "Property") caused by a devastating April 2012 hail storm. In October 2012, Palmer (the owner of the Property) contracted with Ja-Mar Roofing ("Ja-Mar") to remove and replace the roof.

9. Without the knowledge or consent of Palmer, Ja-Mar subcontracted the roofing work to Guy Hardy d/b/a Dripping Springs Roofing ("Dripping Springs") which, in turn, subcontracted the work to JO Roofing ("JO"). However, notwithstanding the subcontract, Dripping Springs directed and controlled the manner by which JO replaced the roof.

10. Dripping Springs, however, negligently directed the installation of the roof system on the Property. As a result, upon the completion of the work on the roof, the Property was damaged by water penetration through the roof and leaks.

**The Underlying Lawsuit**

11. In June 2014, Palmer filed suit against Ja-Mar in Hidalgo County seeking to recover for the damage to the Property. After the filing of that lawsuit, Palmer became

3

aware of the subcontracting of the work to Dripping Springs. Palmer, therefore, filed an amended petition joining Dripping Springs into the lawsuit.

12.　　The lawsuit was tendered to PCIC under the Policy by no later than August 2017. However, PCIC made no effort to defend Dripping Springs at that time. Instead, two months later, in a letter from Golden State Claim Adjusters ("GSCA") (PCIC's claims administrator) dated November 8, 2017, PCIC stated that it was denying coverage based solely on a Hospital Project Work Exclusion contained in the Policy. That denial was improper. It was made without conducting any reasonable investigation, and it was made in bad-faith.

13.　　Two months later, however, PCIC reversed course. In a letter from GSCA dated January 29, 2018, PCIC agreed to defend Dripping Springs pursuant to a reservation of rights. The next day, the attorney retained by PCIC filed an answer on behalf of Dripping Springs.

14.　　PCIC's defense of Dripping Springs was short-lived.

15.　　On February 2, 2018, the attorney retained by PCIC to defend Dripping Springs filed a motion to continue the case from the upcoming April 23, 2018 trial setting. Then on February 21, 2018, the attorney retained by PCIC filed a Suggestion of Death informing the trial court that Guy Hardy had passed away on January 13, 2018. Next, on February 26, 2018, the attorney retained by PCIC filed an amended answer on behalf of Dripping Springs which raised various affirmative defenses, including proportionate responsibility and discharge in bankruptcy.

16. Those defenses, however, were never presented to the Hidalgo County court because PCIC reversed course again. In a letter from GSCA dated March 19, 2018, PCIC stated that it was withdrawing its defense of Dripping Springs and denying all coverage. As before, PCIC's denial was improper. It was made without conducting any reasonable investigation, and it was made in bad-faith.

17. Two days later, the attorney retained by PCIC filed a motion to withdraw as counsel for Dripping Springs clearly articulating the precarious and prejudicial position in which PCIC had left its insured. The attorney stated: "[T]the insurance carrier formerly providing a defense in this lawsuit has denied coverage for a defense, and *there is no method to pay [the attorney] for the legal services to be rendered in the above-styled and numbered cause*" (emphasis added).

18. PCIC effectively left its deceased and destitute insured with no means or method to defend itself. Moreover, by withdrawing the defense when and in the manner it did, PCIC effectively ensured that Dripping Springs would have to go it alone.

19. Palmer's claims against Dripping Springs were severed from its claims against Ja-Mar, and the claims against Dripping Springs were tried to the court in an adversarial bench trial on August 25, 2020.

20. Predictably, Dripping Springs did not fare well. The court found for Palmer and on September 2, 2020, entered a Final Judgment in favor of Palmer and against Dripping Springs for $2,074,208.00 for the reasonable cost to repair the Property; $1,800,000.00 for lost rental income; $1,089,023.92 for pre-judgment interest through August 25, 2020; $3,714.97 for additional prejudgment interest from August 26, 2020

until the date of the judgment on September 2, 2020; and post-judgment interest on the entire amount of the judgment, including prejudgment interest and court costs, at the rate of 5% compounded annually. As a result, both under the common law and under the Policy, Palmer may pursue coverage directly from PCIC.

21. On June 2, 2021, counsel for Palmer provided notice of the Final Judgment to PCIC and demanded that PCIC pay its $1 million limit. To date, PCIC has refused to pay.

## **CAUSES OF ACTION**

### COUNT I
### BREACH OF CONTRACT

22. Plaintiffs repeat and reallege each and every allegation in the paragraphs above with the same force and effect as if fully set forth herein.

23. At all material times herein, PCIC has been aware of its obligations under the Policy. However, by withdrawing its defense and by refusing to indemnify Hardy or to pay Palmer, PCIC has failed to fulfill its contractual obligations under the Policy.

24. PCIC's failure to fulfill its contractual obligations constitutes a material breach of the contract of insurance. PCIC's breach has proximately caused damages to Plaintiffs, for which damages Plaintiffs now sue.

25. As a result of PCIC's breach of contract, Plaintiffs are entitled to recover damages incurred as of the time of trial, plus prejudgment interest at the maximum legal rate. Plaintiffs have made a presentment and demand for payment of such damages, but PCIC has failed to pay Plaintiffs for any such damages.

26. Pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, Plaintiffs are entitled to recover a reasonable amount for attorneys' fees to prosecute this action to require PCIC to honor its clear contractual obligations.

COUNT II
VIOLATIONS OF THE TEXAS INSURANCE CODE
<u>UNFAIR SETTLEMENT PRACTICES</u>

27. Plaintiffs repeat and reallege each and every allegation in the paragraphs above with the same force and effect as if fully set forth herein.

28. In its dealings with Hardy, PCIC has engaged in unfair claim settlement practices in violation of Chapter 541 of the Texas Insurance Code by:

    a. Misrepresenting to Hardy a material fact or policy provision relating to coverage;

    b. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which PCIC's liability has become reasonably clear;

    c. Failing to promptly provide to Hardy a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for PCIC's denial of a claim;

    d. Failing within a reasonable time to affirm or deny coverage; and

    e. Refusing to pay a claim without conducting a reasonable investigation.

29. Hardy has suffered damages as a proximate result of the foregoing conduct and is entitled to recover actual damages and reasonable and necessary attorneys' fees.

30. As a result of PCIC's knowing violations of the Texas Insurance Code, Hardy are also entitled to recover up to three times the amount of actual damages.

## COUNT III
## ESTOPPEL

31. Plaintiffs repeat and reallege each and every allegation in the paragraphs above with the same force and effect as if fully set forth herein.

32. When an insurer's actions in defending a case prejudice the insured, the insured may assert a claim for estoppel to recover any damages it sustains because of the insurer's actions.

33. In this case, PCIC failed to present defenses that may have been available to Dripping Springs. PCIC also put Dripping Springs in a position that it had to defend itself alone with no method to pay for legal services.

34. PCIC's actions in defending Dripping Springs caused substantial prejudice in the form of a judgment in excess of policy limits.

35. As a result of PCIC's conduct, Plaintiffs are entitled to recover from PCIC all damages and liability arising from the roof replacement.

## COUNT IV
## DECLARATORY JUDGMENT

36. Plaintiffs repeat and reallege each and every allegation in the paragraphs above with the same force and effect as if fully set forth herein.

37. In the alternative, Plaintiffs assert this claim for declaratory relief pursuant to 28 U.S.C. § 2201, *et seq.*, for the purpose of determining questions of actual, justiciable controversy between the parties.

38. Plaintiffs seek a judicial determination and a declaration that PCIC had a duty under the Policy to defend Hardy in the underlying lawsuit and that PCIC breached that duty by withdrawing the defense.

39. Plaintiffs also seek a judicial determination and a declaration that PCIC must indemnify Hardy and pay Palmer up to the policy limit under the Policy for any and all damages and liability arising from the roof replacement.

40. Plaintiffs also seek a judicial determination and a declaration that PCIC must indemnify Hardy and pay Palmer for any and all damages and liability arising from the roof replacement, whether under the Policy, by estoppel, other otherwise.

41. Plaintiffs also seek a judicial determination and declaration as to such other matters as are necessary to fully and finally determine the respective rights of the parties and to otherwise construe the legal relations, if any, between them.

## CONDITIONS PRECEDENT

42. All conditions precedent have been performed or occurred, or they have been waived.

## JURY DEMAND

43. Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury.

## PRAYER

WHEREFORE, Plaintiffs Palmer Cravens, LLC n/k/a Park Place Ventures LLC and the Estate of Guy Hardy d/b/a Dripping Springs Roofing, as authorized by and through Nora Finley, the sole heir and representative, pray that PCIC be cited to appear

and make answer herein, and that after a trial on the merits, the Court enter judgment awarding the following:

(1) All actual damages, both direct and consequential, that may be proved at trial;

(2) Statutory damages;

(3) Reasonable and necessary attorneys' fees incurred in the prosecution of this lawsuit, as well as such fees incurred in any subsequent appeal;

(4) Pre-judgment and post-judgment interest as allowed by law at the maximum legal rate;

(5) Costs of Court; and

(6) All other relief, general or special, at law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

BECK REDDEN LLP

/s/ *David W. Jones*
David W. Jones
State Bar No. 00790980
Fed. I.D. No. 18206
djones@beckredden.com
1221 McKinney St., Suite 4500
Houston, Texas 77010
Telephone: (713) 951-3700
Telecopier: (713) 951-3720
Attorney-in-Charge

OF COUNSEL:

RAY THOMAS PC
Raymond L. Thomas
State Bar No. 19865350
rthomas@raythomaspc.com
4900-B North 10th Street
McAllen, Texas 78504
Telephone: (956) 632-5033
Telecopier: (956) 630-5199

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that, on June 28, 2024, a true and correct copy of this document was served on all known counsel of record via the Court's CM/ECF system.

By: */s/ David W. Jones*
David W. Jones